**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GUAN SMALL, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>   v.<br><br>WELCH FOODS INC., A COOPERATIVE,<br><br>             Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Guan Small ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Welch Foods Inc., A Cooperative ("Defendant" or "Welch's") and makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to him, which are based on his personal knowledge.

**NATURE OF THE ACTION**

1.      This is a class action on behalf of purchasers of Defendant's Fruit Snack products (the "Products")[1] that claim to have "No Preservatives."  This representation is false and/or misleading because the Products contain citric acid and ascorbic – two chemical preservatives commonly used in food products.

2.      Citric acid and ascorbic acid function as preservatives in the Products by stabilizing the pH level and preventing oxidation in the Products' ingredients to preserve the

---

[1] The Products include all of Defendant's packaged Fruit Snack products that are advertised as containing "No Preservatives" but contain citric acid and/or ascorbic acid.  On information and belief, the Product varieties include (but are not limited to): Welch's Fruit Snacks Mixed Fruit, Welch's Fruit Snacks Summer Fruits, Welch's Fruit Snacks Berries 'n Cherries, Welch's Fruit Snacks Island Fruits, Welch's Fruit Snacks Superfruit Mix, Welch's Fruit Snacks Strawberry, Welch's Fruit Snacks Apple Orchard Medley, Welch's Fruit Snacks Citrus Medley, Welch's Fruit Snacks Fruit Punch, Welch's Fruit Snacks Concord Grape, Welch's Fruit Snacks Reduced Sugar Mixed Fruit, Welch's Fruit Snacks Reduced Sugar Berries 'n Cherries (the "Products").

color of the ingredients and to reduce the presence of harmful microorganisms.

3.       Defendant's "No Preservatives" representation is featured on the Products' labeling in order to induce health-conscious consumers to purchase foods that are free from preservatives.   Defendant markets its Products in a systematically misleading manner by misrepresenting that the Products do not contain preservatives.

4.       Defendant has profited unjustly as a result of its deceptive conduct.  Plaintiff therefore asserts claims on behalf of himself and similarly situated purchasers for violation of New York General Business Law §§ 349 and 350, breach of express warranty, and unjust enrichment.

## JURISDICTION AND VENUE

5.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6.       This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

7.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8.       Plaintiff Guan Small is a citizen of New York who resides in Bronx, New York. Mr. Small has purchased the Products on numerous occasions in 2023, including most recently in or about January 2023, when he purchased the Products at BJ's store in New York.  In

purchasing the Product, Mr. Small relied on Defendant's false, misleading, and deceptive

marketing of the Product containing "No Preservatives."  Mr. Small understood that "No

Preservatives" meant the Product did not contain any preservatives.  However, the Product he

purchased did contain the preservatives citric acid and ascorbic acid.  Had Mr. Small known the

"No Preservatives" representation was false and misleading, he would not have purchased the

Product, or, at the very least, would have only been willing to purchase the Product at a lesser

price.

9.      Defendant Welch Foods Inc., A Cooperative is a corporation organized under the

laws of Michigan with its principal place of business located in Concord, Massachusetts.

Defendant formulates, advertises, manufactures, and/or sells the Products throughout New York

and the United States.

**GENERAL ALLEGATIONS**

10.     **Defendant misrepresents that the Products contain "No Preservatives."**

Defendant advertises on label of the Products that they contain "No Preservatives."  Thus,

reasonable consumers are led to believe the Products are free from preservatives.  However, the

Products contain citric acid and ascorbic, two chemicals which function as preservatives.

Examples of the Products' labeling, along with their ingredient list, are depicted below:

//

//

//

4



11.    **Citric acid and ascorbic acid are preservatives**.  Citric acid and ascorbic acid, are chemical preservatives as the term is defined by the FDA in 21 C.F.R. §101.22(a)(5): "The term chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

12.    Food preservatives are classified into two main groups: antioxidants and antimicrobials.  Food scientists agree that the chemical properties of citric acid and ascorbic acid make them preservatives.

13.    In its "Overview of Food Ingredients, Additives & Colors," the FDA lists citric acid as a preservative.[2]  The FDA also recognizes that preservatives, like citric acid, are commonly used in packaged foods such as the Products.

14.    Under the "What They Do" table heading, the FDA states that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[3]

15.    The FDA's classification of citric acid as a preservative is also reflected in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc.  In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives ascorbic*

---

[2] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf.

[3] *Id.*

*acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions.  21 C.F.R. [§] 101.22" (emphases added).[4]

16.    **Citric acid has antioxidant and antimicrobial properties.**  Citric acid acts as an antioxidant via two processes—inhibiting enzymes and chelating metals.  Certain enzymes naturally exist in food products that oxidize and breakdown the food products' molecules.  Citric acid deactivates these enzymes, thereby functioning as a preservative.[5]  Citric acid also chelates metal ions, which stabilizes and preserves food products by bonding certain molecules in food products to centrally located metal atoms.[6]

17.    Citric acid also has antimicrobial properties and directly inhibits the growth of some bacteria and mold.[7]  This is yet another reason why food scientists classify citric acid as a preservative.[8]

18.    **Ascorbic acid has antioxidant and antimicrobial properties.**  Ascorbic acid is one of the most widely used food additives for use as an antioxidant and preservative.  It functions as an antioxidant by protecting double bonds and scavenging oxygen.[9]  Ascorbic acid

---

[4] *See* October 6, 2010 FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc.

[5] *Id.*

[6] P. Davidson et al., *Chapter 20: Antimicrobial Agents*, in FOOD ADDITIVES, at 592 (A. Larry Branen et al. eds., Marcel Dekker, Inc. 2d ed. 2002).

[7] L. Su et al., *Study on the Antimicrobial Properties of Citrate-Based Biodegradable Polymers*, FRONTIERS IN BIOENGINEERING AND BIOTECHNOLOGY, 2, 23. https://doi.org/10.3389/fbioe.2014.00023.

[8] *Citric Acid Compound Summary*, NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid.

[9] W. Cort, *Antioxidant Properties of Ascorbic Acid in Foods*, ADVANCES IN CHEMISTRY, Vol. 200, Chapter 22, pp 533-550. https://pubs.acs.org/doi/10.1021/ba-1982-0200.ch022.

also has antimicrobial properties that inhibit the growth of bacterial strains.[10]  Its low pH

prevents microbial growth, thereby preventing food spoilage and preserving freshness and color.

19.    Further, studies have demonstrated that ascorbic acid in conjunction with lactic

acid—another ingredient present in the Products—is effective in inhibiting the growth of *E. coli*

bacteria in food.

20.    Food scientists recognize citric acid and ascorbic acid pretreatment as a method of

preserving fruit color, in addition to its antimicrobial properties.[11]  "The addition of L-ascorbic

acid and citric acid" prior to freeze drying preserves the color of fruits by "increase[ing] the

lightness and redness."[12]

21.    **Citric acid and ascorbic acid function as preservatives in the Products.**  The

presence of citric acid and ascorbic acid functions as preservatives in the Products by stabilizing

the pH levels and preventing oxidation in the Products' fruit and other ingredients thereby

preserving the color and preventing the growth of harmful microorganisms.

22.    **Subjective intent of use is immaterial.**  Citric acid functions as a preservative in

the Products, and this is true regardless of Defendant's subjective purpose or intent for adding it

---

[10] S. Mousavi et al., *Immunomodulatory and Antimicrobial Effects of Vitamin C*, European Journal of Microbiology & Immunology, 2019 Aug 16; 9(3):73-79, https://akjournals.com/view/journals/1886/9/3/article-p73.xml.

[11] Stanislaw Rudy et al., I*nfluence of pre-treatments and freeze-drying temperature on the process kinetics and selected physico-chemical properties of cranberries (Vaccinium macrocarpon Ait.)*, 63 LWT – Food Sci. and Tech. 497, 497, 498 (2015), https://www.sciencedirect.com/science/article/abs/pii/S0023643815002200.

[12] *Id.*

to the Products, such as to impart flavor.[13]

23.     Even if the Products' citric acid does not function as a preservative in the Products (which it does), it nonetheless qualifies as a preservative given that it has the capacity or tendency to do so.  *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, tends to prevent or retard deterioration"); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.");[14] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving").[15]

24.     **The Products' citric acid is chemically processed.**  Citric acid is naturally occurring when derived from certain citrus fruits.  That is not true of the citric acid contained in the Products.  The citric acid contained in the Products is commercially manufactured and the result of extensive chemical processing.[16]  In fact, more than 90 percent of commercially produced citric acid, including the citric acid contained in the Products, is manufactured through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and

---

[13] *Citric Acid* in KIRK-OTHMER FOOD & FEED TECH., at 262 (John Wiley & Sons, 2007); L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing,* in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); M. Abd-Elhady, *Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry*, 59 ANNALS OF AGRIC. SCIS., 69-75 (2014); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives").

[14] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

[15] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative.

[16] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020).

diseases in humans.[17]  Negative side effects of consuming manufactured citric acid include:

swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of

breath.[18]

25.    **Defendant exploits consumer demand for preservative-free foods and**

**beverages.**  Defendant's misrepresentation seeks to capitalize on consumers' preference for

products with no preservatives.  Indeed, "foods bearing 'free-from' claims are increasingly

relevant to Americans, as they perceive the products as closely tied to health … 84 percent of

American consumers buy free-from foods because they are seeking out more natural or less

processed foods.  In fact, 43 percent of consumers agree that "free-from" foods are healthier than

foods without a "free-from" claim, while another three in five believe the fewer ingredients a

product has, the healthier it is (59 percent).  Among the top claims free-from consumers deem

most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[19]

26.    According to another study, when consumers were asked to choose a product that

was the closest to their understanding of what "natural" means on product labels, on balance,

they chose products with "No Preservatives" labels.[20]

---

[17] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y; K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690

[18] *Id.*

[19] *See, Free-From Food Trends-US-May 2015*, MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed.

[20] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

27.     Accordingly, Defendant's misrepresentations are material to reasonable

consumers. Reasonable consumers would attach importance to a representation that a product

has "No Preservatives" because research demonstrates that a majority of consumers place

importance on "preservative-free" claims.

28.     The global sale of healthy food products is estimated to be $4 trillion dollars and

is forecasted to reach $7 trillion by 2025.[21]  Thus, consumers are willing pay a premium for

healthy, non-preservative food items, as they hoped for in purchasing the Products.

29.     Defendant's misleading and deceptive practices proximately caused harm to

Plaintiff and the proposed class members who suffered an injury in fact and lost money or

property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff seeks to represent a class defined as all persons in the United States who,

during the applicable statute of limitations period, purchased Defendant's Products (the "Class").

31.     Plaintiff seeks to represent a subclass defined as all Class members who reside in

New York who purchased the Products (the "New York Subclass") (collectively with the Class,

the "Classes").

32.     Members of the Classes are so numerous that their individual joinder herein is

impracticable.  On information and belief, members of the Class number in the hundreds of

thousands.  The precise number of Class members and their identities are unknown to Plaintiff at

this time but may be determined through discovery.  Class members may be notified of the

---

[21] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html.

pendency of this action by mail and/or publication through the distribution records of Defendant
and third-party retailers and vendors.

33.     Common questions of law and fact exist as to all Class members and predominate
over questions affecting only individual Class members.  Common legal and factual questions
include, but are not limited to, the true nature and presence of preservatives in the Products;
whether the marketing, advertising, packaging, labeling, and other promotional materials for the
Products are deceptive; whether Plaintiff and the members of the Classes have suffered damages
as a result of Defendant's actions and the amount thereof; and whether Plaintiff and the members
of the Classes are entitled to attorneys' fees and costs.

34.     The claims of the named Plaintiff are typical of the claims of the Class in that the
named Plaintiff was exposed to Defendant's false and misleading marketing, purchased
Defendant's Products, and suffered a loss as a result of those purchases.

35.     Plaintiff is an adequate representative of the Classes because his interests do not
conflict with the interests of the Class members they seek to represent, they have retained
competent counsel experienced in prosecuting class actions, and they intend to prosecute this
action vigorously.  The interests of Class members will be fairly and adequately protected by
Plaintiff and his counsel.

36.     The class mechanism is superior to other available means for the fair and efficient
adjudication of the claims of Class members.  Each individual Class member may lack the
resources to undergo the burden and expense of individual prosecution of the complex and
extensive litigation necessary to establish Defendant's liability.  Individualized litigation
increases the delay and expense to all parties and multiplies the burden on the judicial system
presented by the complex legal and factual issues of this case.  Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of the New York General Business Law ("GBL") § 349**
**(On behalf of the New York Subclass)**

37.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged

above.

38.     Plaintiff brings this cause of action on behalf of themselves and members of the

New York Subclass against Defendant.

39.     Plaintiff and New York Subclass members are "persons" within the meaning of

the GBL § 349(h).

40.     Defendant is a "person, firm, corporation or association or agent or employee

thereof" within the meaning of GBL § 349(b).

41.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business,

trade or commerce are unlawful."

42.     Defendant made false and misleading statements by marketing the Products as

containing "No Preservatives" when in fact they contain citric acid and ascorbic acid which

function as preservatives in the Products.

43.     In doing so, Defendant engaged in deceptive acts or practices in violation of GBL

§ 349.

44.     Defendant's deceptive acts or practices were materially misleading.  Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

45.     Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

46.     Defendant's actions set forth above occurred in the conduct of trade or commerce.

47.     The foregoing deceptive acts and practices were directed at consumers.

48.     Defendant's misleading conduct concerns widely-purchased consumer products and affects the public interest.  Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Products.

49.     Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Products had they known the truth, and (b) they overpaid for the Products on account of the "No Preservatives" misrepresentation, as described herein.

50.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover their actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

14

**COUNT II**
**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

51.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

52.    Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

53.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

54.    Defendant's labeling and advertisement of the Products was false and misleading in a material way.  Specifically, Defendant advertised the Products as containing "No Preservatives" when in fact they contain citric acid and ascorbic acid which function as preservatives in the Products.

55.    Plaintiff and reasonable consumers understand Defendant's misrepresentations to mean that the Products do not contain preservatives.

56.    This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

57.    This misrepresentation has resulted in consumer injury or harm to the public interest.

58.    As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Products on account of the "No Preservatives" misrepresentation, as described herein.

59.    By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and

15

New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Breach of Express Warranty**
**(On behalf of the Class and the New York Subclass)**

60.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

61.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

62.    Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contain "No Preservatives."

63.    Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

64.    In fact, the Products do not conform to Defendant's representations and warranties because the Products contain citric acid and ascorbic acid which function as preservatives in the Products.  By falsely representing the Products in this way, Defendant breached its express warranty.

65.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for them, had they known they contained a preservative.

16

66.     On February 27, 2023, Plaintiff sent Defendant, via certified mail, a pre-suit

notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel

sent Defendant a letter advising that Defendant breached an express warranty and demanding

that Defendant make full restitution by refunding the monies received therefrom.

**COUNT IV**
**Unjust Enrichment**
**(In the Alternative)**

67.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged

above.

68.     Plaintiff brings this claim individually and on behalf of members of the Class

against Defendant.

69.     Plaintiff and Class members conferred benefits on Defendant by paying money to

Defendant for the purchase of the Products.

70.     Defendant has knowledge of such benefits.

71.     Defendant has been unjustly enriched in retaining the revenues derived from

Plaintiff's and Class members' purchase of the Products.  Retention of those moneys under these

circumstances is unjust and inequitable because Defendant misrepresented that the Products

contain "No Preservatives" when in fact they contain citric acid and ascorbic acid which function

as preservatives in the Product.

72.     Because Defendant's retention of the non-gratuitous benefits conferred on it by

Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff

and the Class members as ordered by the Court.

17

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seek

judgment against Defendant, as follows:

(a)    For an order certifying the Class and New York Subclass under Rule 23 of the
Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class
and New York Subclass, and naming Plaintiff's attorneys as Class Counsel to
represent the Class and New York Subclass;

(b)    For an order finding in favor of Plaintiff and the Classes on all counts asserted
herein;

(c)    For compensatory and statutory damages in amounts to be determined by the
Court and/or jury;

(d)    For prejudgment interest on all amounts awarded;

(e)    For an order of restitution and all other forms of equitable monetary relief;

(f)    For an order enjoining Defendant from continuing the illegal practices detailed
herein and compelling Defendant to undertake a corrective advertising campaign;
and

(g)    For an order awarding reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable as of right.


Dated: May 8, 2024                                    Respectfully submitted,


**BURSOR & FISHER, P.A.**


By:    */s/ Israel Rosenberg*
          Israel Rosenberg

Alec Leslie
Julian C. Diamond
Israel Rosenberg
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: aleslie@bursor.com

19

jdiamond@bursor.com
irosenberg@bursor.com

*Attorneys for Plaintiff*